**SHIELDS PETITTI, PLC**
Michael J. Petitti, Jr. – 011667
Paige C. Pataky – 029951
5090 N. 40th Street, Suite 207
Phoenix, Arizona 85018
Telephone: (602) 718-3330
Facsimile: (602) 675-2356
E-Mail:  mjp@shieldspetitti.com
E-Mail:  pcp@shieldspetitti.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Handson, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| McLane Sunwest, a Texas corporation doing business in Arizona, | |
| Defendant. | |

Plaintiff Gabriel Handson ("Plaintiff") for his cause of action against Defendant McLane Sunwest ("Defendant") alleges:

**GENERAL ALLEGATIONS**
**(Parties and Jurisdiction)**

1. Plaintiff is a resident of Maricopa County, Arizona and was a resident of Maricopa County during all relevant times.

2. Defendant is a Texas corporation doing business in Arizona.

1

1197044.1

3. Defendant has committed actions and caused events to occur in Maricopa County, Arizona, which are the foundation of this action and out of which this action arises.

**(Nature of Action)**

4. This is an action brought by Plaintiff to vindicate violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

**(Jury Demand)**

5. Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Plaintiff demands a jury trial.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

6. Plaintiff is a black male. He was employed as a Customer Service Representative by Defendant from approximately October 23, 2017 until his discharge on September 4, 2020.

7. At all times, Plaintiff performed with competence and distinction and to Defendant's benefit. For example, Plaintiff routinely received positive performance evaluations. He was awarded Defendant's "Sunwest Rising Star" in February 2020 for his "outstanding performance and lasting contributions to [p]romote McLane [b]eliefs and [v]alues."

8. Unfortunately, despite his exemplary performance, Plaintiff experienced different and discriminatory treatment compared to similarly situated female and non-black employees in the terms and conditions of his employment, including, but not limited to,

assignments, discipline and termination.

9. During most of his employment, Plaintiff was the only male employee in his department, and the only black male employee and one of three black employees in the department.

10. Plaintiff's supervisors, including and primarily Margo Star, routinely made demeaning and discriminatory references to Plaintiff. For instance, he was often referred to as "boy," and "Snoop Dog" (a reference to an African American rapper). Plaintiff did his best to ignore these demeaning and harassing terms and comments and continue to perform his job to the best of his abilities.

11. Similarly, Ms. Star often made inappropriate sexual comments to Plaintiff and unwelcomed touching, such as comments about him being good looking, asking him to bend over so she could watch and rubbing his back. As with the racist comments, Plaintiff tried to ignore Ms. Star's outrageous and unwanted actions and simply do his job.

12. In approximately late 2018 or early 2019, Plaintiff and a coworker witnessed another coworker making insensitive and inflammatory remarks about blacks, immigrants and people of color. Ms. Star was present during the discriminatory comments made by the coworker, who she also supervised. Ms. Star, however, did nothing to either correct or end the conversation. Plaintiff and his coworker were deeply offended by the statements.

13. As a result, Plaintiff's coworker submitted a complaint to Defendant's Human Resource representative about the incident. Plaintiff was interviewed as part of the

3

1197044.1

complaint investigation. He expressed his concerns with the discriminatory comments. He also discussed his concerns about the racially hostile environment throughout the department and that was permitted and often joined in by his supervisor, Ms. Star.

14. Not only was the employee not disciplined who made the racially charged comments, she, in fact, received a pay raise and promotion.

15. On approximately August 25, 2020, Plaintiff's supervisor gave him a task that was well outside his position and responsibilities and one that he was not qualified to perform. The task involved merchandising and sales, not customer service. Plaintiff was concerned because the request was outside of the position's responsibilities for which he was hired. Moreover, he had not been trained for such a role and was not qualified to perform it. He was also concerned that he would not be able to perform the task and that it would negatively impact not only himself, but Defendant and its customers. Plaintiff shared his concerns with Ms. Star.

16. On August 27, 2020, he was called into a meeting with her and Defendant's Divisional Vice President, Tim Meir. During this meeting, Plaintiff was harassed and demeaned. Mr. Meir in fact admitted that he was being "sarcastic," a "smart ass," and a "smart aleck" towards Plaintiff. Plaintiff again raised his concerns that the task was outside his responsibilities, he had not been trained for the task and that he did not believe he was qualified to perform it. He also informed them during the 30 or so minute meeting that he suffered from anxiety and felt uncomfortable and unsafe because of their harassing conduct.

4

1197044.1

He asked to be allowed a witness for the meeting.

17. Plaintiff attempted to contact Defendant's corporate office after the meeting to voice his good faith concerns that he was being treated differently because of his race and sex. He left a message with Barry Taft, an HR representative for Defendant.

18. Then, on August 28, 2020, Plaintiff was called into a meeting with Human Resources representative Katy Kim but discovered for the first time that Mr. Meir and Ms. Star would also be present. He again requested that a witness be present but was denied this right.

19. After the meeting, Plaintiff contacted Mr. Taft. He spoke with him and filed a complaint relating to his good faith concerns that Defendant's agents were discriminating against him because of his race and sex. He also discussed the previous and ongoing discrimination and harassment that he was experiencing.

20. Almost immediately after filing the complaint with Defendant's corporate Human Resources office, Defendant suspended Plaintiff for alleged insubordination. He later learned that the suspension was without pay. He was informed of the suspension in a public area of the workplace by Mr. Meir and Ms. Kim, which was also witnessed by several of Plaintiff's coworkers.

21. Plaintiff subsequently found out that Defendant had discharged him on September 4, 2020, but only after he inquired about the status of his suspension with Ms. Kim on September 21, 2020 because he had not heard anything yet.

1197044.1

22. Defendant's reasons for discharging Plaintiff are false and pretextual.

23. On August 26, 2020, Plaintiff contacted the Equal Employment Opportunity Commission ("EEOC") to schedule an interview.  He was then interviewed by the EEOC on August 31, 2020.  On October 7, 2020, Plaintiff timely filed a charge of race, color, sex and retaliation discrimination with the EEOC.

24. The EEOC issued its notice of right to sue thereafter.  (A copy of the Notice is attached and incorporated as Exhibit 1.)

25. Plaintiff is damaged by the wrongful acts of Defendant and its agents herein alleged, which damage includes, without limitation, the following:

    a. Lost salary and employment benefits, including medical benefits, due Plaintiff at the time of his discharge and since his discharge;

    b. Injury to Plaintiff's reputation and long-term employment and career possibilities and income potential flowing from the discriminatory and wrongful conduct by Defendant and its agents from the period of underemployment he experienced since Defendant's illegal conduct; and

    c. Injury from humiliation, trauma, extreme stress, depression and physical and mental pain and anguish.

26. The willful and wanton misconduct on the part of Defendant is such that it justifies an award of punitive damages.

1197044.1

27. All prerequisites to Plaintiff filing suit have been met.

28. All allegations of this Complaint are incorporated into each claim for relief in this Complaint.

**FIRST CLAIM FOR RELIEF**
**(Race/Color Discrimination in Violation of Title VII)**

29. Plaintiff is a member of a protected class (black).  The acts and conduct of Defendant, as alleged above, were in violation of Title VII.  Defendant intentionally discriminated against Plaintiff based on his race and color.  Similarly situated non-black employees were treated more favorably than Plaintiff in the terms and conditions of their employment.

30. Plaintiff timely filed a charge of discrimination and retaliation with the EEOC.  The EEOC issued its Notice of Right to Sue thereafter.  (Exhibit 1).

31. Plaintiff is damaged by Defendant's violations of Title VII as hereinabove alleged or as proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Sex Discrimination in Violation of Title VII)**

32. Plaintiff is a member of a protected class (male).  The acts and conduct of Defendant, as alleged above, were in violation of Title VII.  Defendant intentionally discriminated against Plaintiff based on his gender.  Similarly situated female employees were treated more favorably than Plaintiff in the terms and conditions of their employment.

33. Plaintiff timely filed a charge of discrimination and retaliation with the EEOC.

7

1197044.1

The EEOC issued its Notice of Right to Sue thereafter.  (Exhibit 1).

34. Plaintiff is damaged by Defendant's violations of Title VII as hereinabove alleged or as proven at trial.

### THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

35. Defendant intentionally, knowingly and maliciously or, in the alternative, in reckless disregard of Plaintiff's federally protected rights, retaliated against Plaintiff after he reported his good faith concerns of sexual discrimination and harassment and race and color discrimination.

36. Plaintiff timely filed a charge of discrimination and retaliation with the EEOC. The EEOC issued its Notice of Right to Sue thereafter.  (Exhibit 1).

37. As a proximate result of Defendant's wrongful conduct, Plaintiff has been damaged as alleged herein or as proven at trial.

WHEREFORE, Plaintiff requests Judgment in his favor and against Defendant as follows:

A. For all injunctive and declaratory relief necessary, including a declaration that Defendant's conduct violated Title VII and enjoining Defendant from conduct violating Plaintiff's rights;

B. For actual, consequential and incidental damages as alleged herein or as proven at trial;

C. For punitive damages;

1197044.1

D.  For Plaintiff's attorneys' fees and costs incurred in this matter pursuant to Title VII and any other applicable statute, rule or regulation;

E.  For interest on each element of damage, cost or attorneys' fees at the highest legal rate from the date of such damage, cost or attorneys' fees was incurred until paid; and

F.  For such other and further relief as the Court deems just and proper.

DATED this 1st day of February, 2021.

SHIELDS PETITTI, PLC


By <u>Michael J. Petitti, Jr.</u>
Michael J. Petitti, Jr.
Paige C. Pataky
5090 N. 40th Street, Suite 207
Phoenix, AZ 85018
*Attorneys for Plaintiff*

1197044.1